UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| GABRIEL SEATON, | ) | |
|---|---|---|
| *Plaintiff*, | ) | Case No. 2:20-CV-124 |
| v. | ) | Judge Collier |
| BLACK & DECKER (U.S.), INC., | ) | Magistrate Judge Wyrick |
| *Defendant*. | ) | |

**M E M O R A N D U M**

Before the Court is a motion for summary judgment by Defendant Black & Decker (U.S.), Inc. (Doc. 19.) Plaintiff Gabriel Seaton has filed a response (Doc. 25), and Defendant has replied (Doc. 26). For the following reasons, the Court will **GRANT IN PART** and will **DENY IN PART** Defendant's motion for summary judgment (Doc. 19).

**I.      BACKGROUND**

On June 6, 2019, Plaintiff purchased a battery-powered hedge trimmer, manufactured by Defendant, from a hardware store in Greeneville, Tennessee. Plaintiff had "a good respect for different machinery and tools" (Doc. 25-2 at 2), although he had never assembled or operated a hedge trimmer.

After purchasing the hedge trimmer, Plaintiff began to assemble it at home. He unpacked the hedge trimmer's box, which was taped and sealed, and removed the box's contents to the kitchen counter. The box's contents included the hedge trimmer, a hand guard, and a shield for the blades, as well as an instruction manual. The instruction manual included several warnings, including not to touch the hedge trimmer blades, but did not warn the user that the hedge trimmer's battery was already attached and charged. There was no warning regarding the battery on the

outside of the hedge trimmer's box. Plaintiff was not aware the battery was already attached to the hedge trimmer.

Having placed the box's contents on the kitchen counter, Plaintiff decided the hedge trimmer would be more stable, and avoid scratching the countertop, if he placed a towel underneath it. To do so, Plaintiff picked up the hedge trimmer, placing his left hand on the blades and his right hand on the handle. Plaintiff then lifted the hedge trimmer from the counter and accidentally pressed two switches located on the handle, which turned the hedge trimmer on. When the hedge trimmer turned on, its blades lacerated Plaintiff's left hand. Plaintiff immediately threw the hedge trimmer back onto the counter and pulled his fingers from the blades. He went to the emergency room where he received treatment for his injuries. Later on, Plaintiff was treated by Dr. Benjamin Rogozinski for the injuries to his hand.

On June 2, 2020, Plaintiff filed a lawsuit against Defendant in the Circuit Court for Greene County, Tennessee. (Doc. 1-1.) Plaintiff asserts claims for negligence, implied warranty of fitness, implied warranty of merchantability, and strict liability under Tennessee law. (*Id.*) On June 16, 2020, Defendant removed the case to this Court based on diversity-of-citizenship jurisdiction. (Doc. 1.)

The deadline for Plaintiff to make any expert disclosures was originally November 16, 2020. (Doc. 15.) On November 13, 2020, Plaintiff moved to continue this deadline, stating he needed to take Defendant's Rule 30(b)(6) deposition to decide if an expert was needed. (Doc. 16.) The Court denied Plaintiff's request, finding Plaintiff's reasons for an extension failed to establish good cause to amend the scheduling order. (Doc. 17.)

Defendant has moved for summary judgment. (Doc. 19.) Plaintiff has filed a response (Doc. 25), and Defendant has replied (Doc. 26). The motion for summary judgment is now ripe.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden to demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the Court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). The Court may not make credibility determinations or weigh the evidence in addressing a motion for summary judgment. *Id.* at 255.

If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III. DISCUSSION

Defendant moves for summary judgment on three grounds: Plaintiff's failure to establish one element of his products-liability claims, Plaintiff's comparative fault, and that certain categories of Plaintiff's claims for damages cannot succeed in the absence of expert testimony.

#### A. Products-Liability Claims

The parties agree that Tennessee law, particularly the Tennessee Products Liability Act (the "TPLA"), applies to this case. (*See* Doc. 22 at 5; Doc. 25 at 4.) The TPLA does not impose liability on "[a] manufacturer or seller of a product . . . for any injury to a person . . . caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." Tenn. Code Ann. § 29-28-105(a) (emphasis added). A prima facie products-liability claim therefore exists if the plaintiff shows three elements: "(1) the product was defective and/or unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer's control, and (3) the plaintiff's injury was proximately caused by the defective product." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (internal quotation omitted). These elements are the same regardless of the legal theory or theories on which the plaintiff relies. *See Tatham v. Bridgestone Ams. Holdings, Inc.*, 473 S.W.3d 734, 749 (Tenn. 2015).

Defendant moves for summary judgment based only on Plaintiff's alleged failure to establish the first element of his TPLA claims, that is, that the hedge trimmer was either defective

4

or unreasonably dangerous.[1] (Doc. 22 at 5–10.) Both alternatives—defective condition and unreasonably dangerous—are addressed in turn.

### 1. Defective Condition

The TPLA defines "defective condition" as "a condition of a product that renders it unsafe for normal or anticipatable handling and consumption." Tenn. Code Ann. § 29-28-102(2). The plaintiff has the burden to identify a product's alleged defect. *Langford v. Gatlinburg Real Estate & Rental, Inc.*, 499 F. Supp. 2d 1042, 1051 (E.D. Tenn. 2007). There are several types of defects under Tennessee law. Design and manufacturing defects are commonly alleged, but "the plaintiff can also assert that the product suffers from a warnings defect." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 596 F. Supp. 2d 1101, 1127 (M.D. Tenn. 2009); *see also Spier v. Coloplast Corp.*, 121 F. Supp. 3d 809, 817 (E.D. Tenn. 2015) ("[A] warnings defect claim is simply another species of strict products liability, along with manufacturing and design defect claims."); *King v. Danek Med., Inc.*, 37 S.W.3d 429, 443–44 (Tenn. Ct. App. 2000) (discussing failure-to-warn defect claim).

Defendant asserts Plaintiff has failed to identify a defect in the hedge trimmer (Doc. 22 at 6–7), but the Court disagrees. As Plaintiff's Complaint and summary-judgment response demonstrate, Plaintiff has identified a warnings defect in the hedge trimmer. *See Lee*, 596 F. Supp. 2d at 1127. Specifically, Plaintiff asserts the hedge trimmer was defective based on its lack of warning that the battery was attached and partially charged. (Doc. 25 at 8–13.) Thus, summary judgment is not appropriate based solely on Plaintiff's alleged failure to identify a defect. However, to the extent Plaintiff's TPLA claims are based on a design or manufacturing defect, the

---

[1] The Court need not address the second and third elements of any TPLA claim, as Defendant does not move for summary judgment on those grounds.
5

or unreasonably dangerous.[1] (Doc. 22 at 5–10.) Both alternatives—defective condition and unreasonably dangerous—are addressed in turn.

### 1. Defective Condition

The TPLA defines "defective condition" as "a condition of a product that renders it unsafe for normal or anticipatable handling and consumption." Tenn. Code Ann. § 29-28-102(2). The plaintiff has the burden to identify a product's alleged defect. *Langford v. Gatlinburg Real Estate & Rental, Inc.*, 499 F. Supp. 2d 1042, 1051 (E.D. Tenn. 2007). There are several types of defects under Tennessee law. Design and manufacturing defects are commonly alleged, but "the plaintiff can also assert that the product suffers from a warnings defect." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 596 F. Supp. 2d 1101, 1127 (M.D. Tenn. 2009); *see also Spier v. Coloplast Corp.*, 121 F. Supp. 3d 809, 817 (E.D. Tenn. 2015) ("[A] warnings defect claim is simply another species of strict products liability, along with manufacturing and design defect claims."); *King v. Danek Med., Inc.*, 37 S.W.3d 429, 443–44 (Tenn. Ct. App. 2000) (discussing failure-to-warn defect claim).

Defendant asserts Plaintiff has failed to identify a defect in the hedge trimmer (Doc. 22 at 6–7), but the Court disagrees. As Plaintiff's Complaint and summary-judgment response demonstrate, Plaintiff has identified a warnings defect in the hedge trimmer. *See Lee*, 596 F. Supp. 2d at 1127. Specifically, Plaintiff asserts the hedge trimmer was defective based on its lack of warning that the battery was attached and partially charged. (Doc. 25 at 8–13.) Thus, summary judgment is not appropriate based solely on Plaintiff's alleged failure to identify a defect. However, to the extent Plaintiff's TPLA claims are based on a design or manufacturing defect, the

---

[1] The Court need not address the second and third elements of any TPLA claim, as Defendant does not move for summary judgment on those grounds.

Court will **GRANT IN PART** Defendant's motion (Doc. 19), as Plaintiff fails to identify such a defect.

This determination does not end the Court's inquiry. "A manufacturer is not required to design a product that is perfect, accident-proof, or incapable of causing injury." *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 282 (Tenn. 2005). An injury itself is not proof of a defect. *Shoemake v. Omniquip Int'l, Inc.*, 152 S.W.3d 567, 573 (Tenn. Ct. App. 2003). For example, "a knife is not defective simply because if the user's hand slips, the blade will cut his or her hand." *Privette v. CSX Transp., Inc.*, 79 F. App'x 879, 886 (6th Cir. 2003). Instead, "[e]stablishing this element requires only proof, in a general sense and as understood by a layman, that 'something was wrong' with the product.'" *Browder v. Pettigrew*, 541 S.W.2d 402, 406 (Tenn. 1976) (quoting *Scanlon v. Gen. Motors Corp.*, 326 A.2d 673, 677–78 (N.J. 1974)).

Defendant asserts there is no evidence to establish anything was wrong with the hedge trimmer, in light of Plaintiff's failure to even identify a defect. (Doc. 22 at 6–7.) Plaintiff, however, points to specific facts to demonstrate a genuine issue of fact as to whether the hedge trimmer's lack of warning would be seen as something wrong with the product. *See Chao*, 285 F.3d at 424; *Browder*, 541 S.W.2d at 406. Defendant's expert witness, Jack Elgin Hyde, Jr., CSP, and Defendant's Safety Assurance Manager, Jeffrey Paul Gant, testified that the hedge trimmer had no warning regarding the battery being attached and charged. (*See* Doc. 25-3 at 3 (Hyde Deposition) ("Q. Were there any warnings, to your knowledge, on the battery itself telling the consumer that it is shipped partially charged? A. I'm not aware of any."); Doc. 25-4 at 3 (Gant Deposition) ("Q. Is there any information in that section [of the Instruction Manual] that advises the user/consumer that the battery is already installed in the trimmer? A. No there is not.").) Plaintiff testified that he was not aware the battery was attached, did not think the battery would

6

be attached, and would not have picked it up as he did if he knew the battery was attached and charged. (*See* Doc. 21-2 at 11, 13.) Viewing this evidence in the light most favorable to Plaintiff, Plaintiff's expectation and the lack of warning are sufficient to show a layperson could consider the absence of warnings to be something wrong with the hedge trimmer. *See Browder*, 541 S.W.2d at 406.

Defendant argues Plaintiff's failure-to-warn theory should be rejected because it was not previously raised by Plaintiff and has not been the subject of discovery. (Doc. 26 at 1–2.) Defendant states Plaintiff's Complaint contains only one allegation regarding failure to warn. (*Id.* at 2 (citing Doc. 1-1 ¶ 7).) "It is well-settled that a plaintiff may not expand its claims to assert new theories in response to summary judgment." *Vonderhaar v. Waywire*, 797 F. App'x 981, 990 (6th Cir. 2020) (quoting *Renner v. Ford Motor Co.*, 516 F. App'x 498, 504 (6th Cir. 2013)). "This rule exists to protect defendants from 'unfair surprise' when moving for summary judgment." *Id.* (quoting *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005)).

Plaintiff's failure-to-warn theory is not an unfair surprise to Defendant. In *Vonderhaar*, the plaintiff's summary judgment response put forth a new theory of liability that "bore no resemblance whatsoever" to the complaint. 797 F. App'x at 990. The same is not true here— Count I of Plaintiff's Complaint alleges, in part, Defendant "failed to warn the plaintiff and other consumers and foreseeable users of the hedge trimmer that they should ensure the battery pack was not engaged before beginning assembly of the hedge trimmer." (Doc. 1-1 ¶ 7.) Defendant therefore had notice that Plaintiff might rely on a failure-to-warn theory for his TPLA claims.[2]

---

[2] In fact, Defendant referenced failure-to-warn liability in its summary judgment brief, which suggests Defendant was aware Plaintiff would rely on such a theory. (*See* Doc. 22 at 7 ("A product is not unreasonably dangerous because of a failure to adequately warn of a danger or

7

Although Defendant argues Plaintiff has not pursued discovery on this theory of liability, Plaintiff has sufficiently alleged a warning-defect claim and has pointed to evidence to avoid summary judgment as to a warning-defect claim. The Court finds Plaintiff's failure-to-warn theory is not improper, as it does not expand the claims asserted in his Complaint.

The Court therefore will **DENY IN PART** Defendant's motion for summary judgment (Doc. 19) as to Plaintiff's claims alleging the hedge trimmer was defective.

### 2. Unreasonably Dangerous

Under the TPLA, a product is "unreasonably dangerous" when it:

> is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition.

Tenn. Code Ann. § 29-28-102(8). This definition provides for "two tests: the consumer expectation test and the prudent manufacturer test (which involves risk-utility balancing)." *Jackson v. Gen. Motors Corp.*, 60 S.W.3d 800, 803 (Tenn. 2001) (citing *Ray ex rel. Holman v. BIC Corp.*, 925 S.W.2d 527 (Tenn. 1996)). These tests, however, "are not exclusive of one another and therefore either or both of these tests are applicable to cases where the product is alleged to be unreasonably dangerous." *Jackson*, 60 S.W.3d at 806.

The Court therefore considers whether summary judgment is appropriate under either or both tests. The Court turns first to the prudent-manufacturer test, as Defendant contends it alone can apply to Plaintiff's TPLA claims. (*See* Doc. 22 at 7–9; Doc. 26 at 5.)

---

hazard that is apparent to the ordinary user.").)

### a. Prudent-Manufacturer Test

"The prudent manufacturer test turns on whether, balancing all the relevant factors, a reasonably prudent manufacturer would market the product if it had the knowledge of the dangerous condition." *Irion v. Sun Lighting, Inc.*, No. M2002-00766-COA-R3-CV, 2004 WL 746823, at *7 (Tenn. Ct. App. Apr. 7, 2004). This test requires that the plaintiff offer expert testimony as to the prudence of the defendant's decision to market the product. *Id.* ("Expert testimony is required under the prudent manufacturer test."); *Ray*, 925 S.W.2d at 531 ("[E]xpert testimony about the prudence of the decision to market would be essential."); *Brown v. Raymond Corp.*, 432 F.3d 640, 647 (6th Cir. 2005) (The prudent-manufacturer test is "a test under which expert testimony is required in order to reach the jury."); *Johnson v. Wal-Mart Stores East, LP.*, No. 3:11-CV-469, 2013 WL 3168591, at *4 (E.D. Tenn. June 20, 2013) ("A plaintiff cannot prove that a product is unreasonably dangerous under the prudent manufacturer test without expert testimony."); *Coffey v. Dowley Mfg. Inc.*, 187 F. Supp. 2d 958, 968 (M.D. Tenn. 2002), *aff'd*, 89 F. App'x 927 (6th Cir. 2003) ("[E]xpert testimony about the prudence of the decision to market would be essential.").

Defendant asserts Plaintiff has made no expert disclosures, and the Court notes any such disclosure would be untimely pursuant to its denial of Plaintiff's motion to amend the expert-disclosure deadline. In light of Plaintiff's lack of expert testimony, Plaintiff's TPLA claims fail as a matter of law, insofar as Plaintiff relies on the prudent-manufacturer test to show the hedge trimmer was unreasonably dangerous. Thus, the Court will **GRANT IN PART** Defendant's motion for summary judgment (Doc. 19) as to the prudent-manufacturer test. Plaintiff will be barred from relying on the prudent-manufacturer test to prove the first element of his TPLA claims.

### b. Consumer-Expectation Test[3]

The consumer-expectation test holds that "a product is not unreasonably dangerous if the ordinary consumer would appreciate the condition of the product and the risk of injury." *Tatham*, 473 S.W.3d at 750 (quoting *Ray*, 925 S.W.2d at 530). Plaintiff argues the jury should determine whether this test is met (Doc. 25 at 13), "[b]ut no, juries do not determine whether and when a party presents sufficient evidence to create a triable issue of fact." *See Rodriguez v. Stryker Corp.*, 680 F.3d 568, 573 (6th Cir. 2012).

As an initial matter, Defendant contends the consumer-expectation test cannot apply to Plaintiff's claims based on the hedge trimmer's complexity. (*See* Doc. 22 at 9.) Courts have noted "it may be difficult for plaintiffs in cases involving highly complex products to establish that the product is dangerous to an extent beyond that which would be contemplated by an ordinary consumer, even though the consumer expectation test may, technically, apply." *Jackson*, 60 S.W.3d at 806; *see also Raymond Corp.*, 432 F.3d at 644. However, "[e]ven a technically complex failure may involve a subject about which an ordinary consumer may have an expectation . . . ." *Coffey*, 187 F. Supp. 2d at 972. That is the case here—the design, construction, and manufacturing of the hedge trimmer may be complex, but the general "populace understands the basic functions and purpose." *See Tatham*, 473 S.W.3d at 751 (considering products-liability claim regarding tire). The Court finds "it is quite reasonable to believe that the ordinary consumer has enough experience with [hedge trimmers] to have some expectation as to" the hedge trimmer's warnings at time of sale. *See Bradley v. Ameristep, Inc.*, 800 F.3d 205, 211 (6th Cir. 2015). Thus, the consumer-expectation can apply to Plaintiff's claim.

---

[3] Defendant again asserts Plaintiff's failure-to-warn theory is improper, but as with defective condition, the Court finds this theory of liability is not improper. *See supra* III.A.1.

Plaintiff advances two theories to show the hedge trimmer was unreasonably dangerous: first, the hedge trimmer's battery was attached and charged at the time of sale and second, Defendant failed to warn[4] consumers that the battery was attached and charged. The Court considers each of these theories separately and whether Defendant has demonstrated there is no genuine dispute that the consumer-expectation test is not met and, if so, whether Plaintiff has come forward with specific facts to show otherwise.

First, the consumer-expectation test "requires the consumer to establish what an ordinary consumer purchasing the product would expect." *Ray*, 925 S.W.2d at 531. Stated simply, "if the product is more dangerous than a reasonable consumer would have expected, it is defective." *Coffey*, 187 F. Supp. 2d at 968 (alteration omitted) (quoting *Tatum v. Cordis Corp.*, 758 F. Supp. 457, 461 (M.D. Tenn. 1991))

Defendant asserts "there is no evidence that the hedge trimmer's performance was 'below reasonable minimum safety expectations' of anyone." (Doc. 22 at 10.) Plaintiff, however, has pointed to evidence of his own expectations regarding the hedge trimmer's safety. Viewing the evidence in the light most favorable to Plaintiff, Plaintiff can be considered an ordinary consumer, as he is familiar with power tools despite having never operated a hedge trimmer. (*See* Doc. 21-2 at 3; Doc. 25-2 at 2.) Plaintiff testified he expected the hedge trimmer would not be sold with its battery attached and charged and did not see any warnings to that effect:

Q. And you weren't aware or were you that the battery was attached?

A. I was not aware. Anything I've ever assembled, even a little toy helicopter, the battery is always the last step you put in. . . [C]ommon sense just, like,

---

[4] Plaintiff's lack of expert testimony does not preclude his TPLA claims under the consumer-expectation test. *See Coffey*, 187 F. Supp. 2d at 969 ("While an expert witness is necessary under the prudent manufacturer test, the consumer expectation test, by definition, relies on the expectations of ordinary consumers, not experts.").

11

> tells you that, you know. Like, that's your final piece to the puzzle. You don't assemble a lamp with it plugged into the wall.

(Doc. 21-2 at 11; *see also id.* ("I was not aware. Anything that I've ever assembled, even a little toy helicopter, the battery is always the last step you put in.").) This testimony shows that Plaintiff, an ordinary consumer, had expectations regarding the safety of the hedge trimmer, which were not met.

No case law directly addresses whether a plaintiff's expectation alone satisfies the consumer-expectation test. In *Sigler*, the plaintiff "submitted a sworn affidavit stating her expectation that the airbag would deploy in an accident like the high-speed crash that she alleges occurred," but also relied on the defendant's brochure to show an expectation. 532 F.3d at 485–86. Unlike *Sigler*, where the plaintiff offered both her own affidavit and evidence from the defendant, Plaintiff offers only his own expectation. In *Irion*, "[t]he only proof Ms. Irion offered regarding a consumer's expectation was her own statement that she had no idea how dangerous the lamp was until the fire and the lawsuit," which did not satisfy the consumer-expectation test. 2004 WL 746823, at *16. But Plaintiff's testimony is more direct as to an ordinary consumer's expectations than the statement in *Irion*—Plaintiff stated he expected the battery would not be attached, while the plaintiff in *Irion* simply stated she did not realize the product was dangerous. "Whether [Plaintiff] is successful on a products liability claim under the consumer expectation test will depend on whether the trier of fact agrees that [Plaintiff's] expectation of product performance constituted the reasonable expectation of the ordinary consumer having ordinary knowledge of the product's characteristics." *Jackson*, 60 S.W.3d at 804. The Court finds Plaintiff's expectation, on its own, is sufficient to survive summary judgment, as it provides evidence of an ordinary consumer's expectations regarding the hedge trimmer. *See Ray*, 925 S.W.2d at 531.

Second, "[a] product is not unreasonably dangerous because of a failure to adequately warn of a danger or hazard that is apparent to the ordinary user." Tenn. Code Ann. § 29-28-105(d). There is testimony from Defendant's witnesses that a consumer would know the battery is attached to the hedge trimmer "[b]y looking" (Doc. 25-3 at 2) and that "[t]he battery is visible . . . [and] not hidden" (Doc. 25-4). However, Plaintiff testified he was not aware the battery was attached. (*See* Doc. 21-2 at 13 ("I wasn't thinking that there was going to be a battery in there, so I just grabbed it like so.").) Thus, there is a genuine dispute of fact as to whether the hedge trimmer was unreasonably dangerous based on a failure to warn of the battery's attachment and charge.

Accordingly, the Court will **DENY IN PART** Defendant's motion for summary judgment (Doc. 19) as to Plaintiff's reliance on the consumer-expectation test to establish the hedge trimmer was unreasonably dangerous.

### B. Comparative Fault

Defendant's second ground for summary judgment is Plaintiff's alleged comparative fault. (Doc. 19 at 10–11.) Under Tennessee law, comparative fault precludes a plaintiff's recovery if his fault was equal to or greater than the defendant's fault. *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992). "[I]t is well settled that comparative fault is typically a question for the trier of fact." *Halmon v. Lane College*, No. W2019-01224-COA-R3-CV, 2020 WL 2790455, at *3 (Tenn. Ct. App. May 29, 2020). But "there is no legal prohibition in granting a defendant summary judgment based on the defense of comparative fault." *Id.* (citing *Young v. Jordan*, No. W2015-02453-COA-R9-CV, 2016 WL 5210873, at *4 (Tenn. Ct. App. Sept. 20, 2016)). Summary judgment based on comparative fault is appropriate if, viewing the evidence in the light most favorable to the non-moving party, "reasonable minds could not differ that [the plaintiff's] fault was equal to or greater than that of the defendant[]." *Id.*

13

Comparative fault is an affirmative defense, so "the defendant must 'conclusively establish the affirmative defense' by pointing to undisputed facts that prove the defense." *Ellington v. Jackson Bowling & Family Fun Center, L.L.C.*, No. W2012-00272-COA-R3-CV, 2013 WL 614502, at *10 (Tenn. Ct. App. Feb. 19, 2013) (quoting *McMahan v. Sevier Cnty.*, No. E2005-02028-COA-R3-CV, 2007 WL 1946650, at *2 (Tenn. Ct. App. July 3, 2007)). Defendant argues there is no dispute of fact that Plaintiff's fault in sustaining his injury was at least, if not more, than fifty percent, which precludes him from recovery under Tennessee comparative-fault law. (Doc. 19 at 10–11.) Plaintiff responds his actions were reasonable, particularly in light of the lack of warnings regarding the battery and being unaware the battery was attached. (Doc. 25 at 13.)

Plaintiff's proportion of fault depends, at least in part, on whether the battery's attachment to the hedge trimmer was apparent. However, as discussed above, there is a genuine dispute as to whether it was apparent that the battery was attached. *See supra* III.B.2.b. Based on this genuine dispute of fact, the Court finds reasonable minds could differ as to whether Plaintiff's fault was equal to or greater than Defendant's fault. *See Halmon*, 2020 WL 2790455, at *3. Thus, the Court will **DENY IN PART** Defendant's motion for summary judgment (Doc. 19) on the grounds of comparative fault.

### C. Claims for Damages Without Expert Testimony

Defendant's third ground for summary judgment asserts Plaintiff cannot recover certain categories of damages without expert testimony, which he does not have. (Doc. 22 at 11–12.) Plaintiff asks the Court to deny Defendant's motion as to these claims, stating his counsel failed to file expert disclosures of Plaintiff's treating physician due to ongoing negotiations. (Doc. 25 at 13–14.) In addition, Plaintiff states his treating physician can provide the testimony necessary to recover certain damages. (*Id.*)

14

As relevant here, Plaintiff's Complaint seeks damages for medical expenses, past and future pain and suffering, and diminished work capacity.[5] (Doc. 1-1 ¶ 11.) The Court will address whether these categories of damages require expert testimony to be recovered.

First, Plaintiff appears to seek only past medical expenses, not future medical expenses. (*See* Doc. 1-1 ¶ 11; Doc. 21-2 at 3 (Plaintiff's Deposition) ("Q. Do you have any reason to think [your injury is] going to cost you something out of pocket in the future? A. No, sir.").) "[T]o recover for [medical] expenses, expert opinion must be offered regarding the reasonableness and necessity of the physician's services and charges." *Stricklan v. Patterson*, No. E2008-00203-COA-R3-CV, 2008 WL 4791485, at *4 (Tenn. Ct. App. Nov. 4, 2008); *see also Klamborowski v. Johnson*, No. M2013-COA-R3-CV, 2014 WL 2002140, at *4 (Tenn. Ct. App. May 13, 2014) (quoting *Al-Athari v. Gamboa*, No. M2013-00795-COA-R3-CV, 2013 WL 6908937, at *3 (Tenn. Ct. App. Dec. 30, 2013)) ("The law requires a plaintiff seeking to recover damages resulting from a personal injury to present competent expert testimony (1) to prove medical expenses were necessary and reasonable and (2) to establish that a plaintiff's physical injury was in fact caused by the incident at issue.").

Plaintiff asserts the deposition testimony of his treating physician, Dr. Rogozinski, can establish his damages claim for past medical expenses. (*See* Doc. 25-5.) However, it cannot, as it does not address either the reasonableness or the necessity of Plaintiff's medical expenses. (*See id.*) Moreover, such opinions would necessarily be expert opinions under Rule 702 of the Federal

---

[5] Plaintiff also seeks damages for loss of enjoyment of life, but Defendant does not move for summary judgment on these damages, and expert testimony is not required to recover for loss of enjoyment of life. *See Adams v. Farbota*, No. 3:13-cv-01449, 2015 WL 2455124, at *3 (M.D. Tenn. May 22, 2015) ("[L]oss of enjoyment of life can be based on relatively mundane facts that are well within the province of the jury to understand and evaluate without the need for expert testimony.").

Rules of Evidence, and Plaintiff has not made any expert disclosures, as discussed above. Thus, Plaintiff cannot recover his past medical expenses, as he fails to present expert testimony as to the reasonableness and the necessity of such expenses. The Court will **GRANT IN PART** Defendant's motion for summary judgment (Doc. 19) as to Plaintiff's damages claim for past medical expenses.

Second, Plaintiff seeks to recover damages for his past and future pain and suffering. (Doc. 1-1 ¶ 11.) "Pain and suffering 'encompasses the physical and mental discomfort caused by an injury' and 'includes the wide array of mental and emotional responses that accompany the pain, characterized as suffering, such as anguish, distress, fear, humiliation, grief, shame, or worry.'" *Adams v. Farbota*, No. 3:13-cv-01449, 2015 WL 2455124, at *2 (M.D. Tenn. May 22, 2015) ("*Adams I*") (quoting *Huskey v. Rhea Cnty.* at *15). For past pain and suffering, a plaintiff may rely on lay testimony to recover. *See id.* (citing *Williams v. Steward*, No. 02A01-9712-CV-00311, 1998 WL 408795, at *3 (Tenn. Ct. App. July 22, 1998)). To recover for future pain and suffering, however, "proof of that kind is usually required to be in the form of expert testimony." *Williams v. Steward*, No. 02A01-9712-CV-00311, 1998 WL 408795, at *3 (Tenn. Ct. App. July 22, 1998); *see also Adams I*, 2015 WL 2455124, at *2 (citing *Williams*, 1998 WL 408795, at *3) (stating it would "not be reversible error for the court to . . . preclude the recovery of *future* pain and suffering in the absence of expert testimony"). Accordingly, Plaintiff can seek to recover damages for any past pain and suffering, but Plaintiff is barred from seeking damages for any future pain and suffering due to his lack of expert testimony. Defendant's motion for summary judgment (Doc. 19) will be **DENIED IN PART** as to Plaintiff's damages claim for past pain and suffering and will be **GRANTED IN PART** as to Plaintiff's damages claim for any future pain and suffering.

Third, Plaintiff seeks damages for his diminished earning capacity. (Doc. 1-1 ¶ 11.) "[W]hen damages are sought for loss of earning capacity, further expert proof is sometimes needed to specifically link the injury sustained to the impairment of the injured party's capacity to earn a living." *Brown v. Echols*, 585 S.W.3d 424, 429 (Tenn. Ct. App. 2019). Expert testimony is required "where an alleged physical impairment and earning capacity is not obvious." *Adams v. Farbota*, 306 F.R.D 563, 570–71 (M.D. Tenn. 2015) ("*Adams II*"). Plaintiff does not explain any way in which the relationship between his injury and earning capacity is obvious. As a result, the Court finds expert testimony is required for Plaintiff to recover damages based on his alleged diminished earning capacity. *See id.* Accordingly, the Court will **GRANT IN PART** Defendant's motion for summary judgment (Doc. 19) as to Plaintiff's damages claim for diminished earning capacity.

In sum, summary judgment is appropriate as to Plaintiff's damages claims for past medical expenses, future pain and suffering, and diminished earning capacity, and Plaintiff will be precluded from recovering such damages.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion for summary judgment (Doc. 19), as follows:

1. The motion will be **GRANTED** as to Plaintiff's claims based on the hedge trimmer's alleged defective condition due to a design or manufacturing defect;

2. The motion will be **DENIED** as to Plaintiff's claims based on the hedge trimmer's alleged defective condition due to a warnings defect;

3. The motion will be **GRANTED** to the extent Plaintiff relies on the prudent-manufacturer test to establish the hedge trimmer was unreasonably dangerous;

4. The motion will be **DENIED** to the extent Plaintiff relies on the consumer-expectation test to establish the hedge trimmer was unreasonably dangerous;

5. The motion will be **DENIED** as to comparative fault;

6. The motion will be **GRANTED** as to Plaintiff's damages claim for past medical expenses;

7. The motion will be **DENIED** as to Plaintiff's damages claim for past pain and suffering;

8. The motion will be **GRANTED** as to Plaintiff's damages claim for future pain and suffering; and

9. The motion will be **GRANTED** as to Plaintiff's damages claim for diminished earning capacity.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**